# COURT OF CHANCERY
# OF THE
# STATE OF DELAWARE

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

May 14, 2020

Bradley R. Aronstam, Esquire
Roger S. Stronach, Esquire
Ross Aronstam & Moritz LLP
100 South West Street, Suite 400
Wilmington, DE  19801

Michael A. Barlow, Esquire
Daniel J. McBride, Esquire
Abrams & Bayliss LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19807

RE: *Fortis Advisors LLC, v. Allergan W.C. Holding Inc.,*
C.A. No. 2019-0159-MTZ

Dear Counsel:

I write regarding Defendant's Motion to Treat Real-Party-in-Interest Sellers as Parties for Purposes of Discovery and Trial, and to Compel Discovery (the "Motion").[1]  The Motion, filed on January 17, 2020, addresses Defendant Allergan W.C. Holding Inc.'s ("Allergan") request for an order requiring the former stockholders of Oculeve, Inc. (the "Stockholders") to participate in discovery as real parties in interest and to be subject to trial subpoenas as parties; or in the alternative, compelling the Stockholders' agent, Plaintiff Fortis Advisors LLC ("Fortis" or "Shareholder Representative"), to procure and produce documents and testimony from the Stockholders.  The parties completed briefing on the Motion on February

---

[1] Docket Item ("D.I.") 48.

27.    On March 2, I held a hearing on the Motion and took the matter under advisement.  For the reasons that follow, the Motion is denied.

## I.    Background

This case arose out of Allergan's merger with Oculeve under the Agreement and Plan of Merger (the "Merger Agreement") executed on July 5, 2015.  Under Section 2.10(a) of the Merger Agreement, the Stockholders appointed Fortis to be the Shareholder Representative, acting as the Stockholders' "sole, exclusive, true and lawful agent, representative and attorney-in-fact" with respect to "any and all matters relating to, arising out of, or in connection with" the Merger Agreement, including contingent payments.[2]   The Agreement provides that "[a]ll actions, notices, communications and determinations by or on behalf of the [Stockholders] shall be given or made by the Shareholders' Representative."[3]  Specifically, Fortis was appointed to "receive service of process in connection with any claims under this Agreement."[4]    "[T]he [Stockholders] do not have any requirements, prerequisites or veto rights in connection with the Shareholders' Representative's

---

[2] D.I. 10 [hereinafter "Am. Compl."], Ex. A § 2.10(a)(i) [hereinafter "Merger Agreement"].

[3] *Id.* § 2.10(a).

[4] *Id.* § 2.10(a)(vii).

fulfillment of its obligations."[5] The Merger Agreement does not grant Fortis access to the Stockholders' books and records. Fortis's obligations are limited to those enumerated in the Merger Agreement.[6]

Allergan bargained for certain access to Oculeve information. Under Section 6.2, Oculeve agreed to "make available for inspection by [Allergan] and its Representative . . . all of [Oculeve's and its Affiliates'] respective properties, assets, books of accounts, records . . . and any other materials requested by any of them relating to [Oculeve] and its existing and prospective businesses and assets and Liabilities."[7] Oculeve also agreed to make its officers and senior management available to Allergan "to verify and discuss the information the information furnished to [Allergan] and its Representatives and otherwise discuss [Oculeve]'s existing and prospective businesses and assets and Liabilities."[8] Under Section 6.3(b), the parties also agreed to make available "any and all information or books

---

[5] *Id.*

[6] *Id.* § 2.10(a) ("Notwithstanding the foregoing, the Shareholders' Representative shall have no obligation to act on behalf of the [Stockholders], except as expressly provided herein and in the Escrow Agreement, and for purposes of clarity, there are no obligations of the Shareholders' Representative in any other ancillary agreement, schedule or exhibit to be delivered in connection with this Agreement or the Escrow Agreement or in the Disclosure Schedule.").

[7] *Id.* § 6.2.

[8] *Id.*

and records necessary to prepare or file" a tax return, including a pre-closing tax period or to respond to an audit for any pre-closing tax period.[9]

Allergan and Fortis dispute the Stockholders' entitlement to post-closing milestone consideration under the Merger Agreement. For the Stockholders to earn the milestone payment, Allergan's medical device had to achieve a specifically defined enhanced treatment authorization (the "Enhanced Product Labeling Milestone") from the Federal Drug Administration ("FDA").[10] After the FDA gave its authorization, Allergan declined to pay the Stockholders the milestone payment, contending the FDA's authorization fell short of what was contractually required.[11]

Fortis, as Shareholder Representative, asserts Allergan materially breached the Merger Agreement by failing to make the Enhanced Product Labeling Milestone payment,[12] and by failing to use commercially reasonable and good faith efforts to achieve the Enhanced Product Labeling Milestone before March 31, 2018.[13] I sustained these claims over Defendants' motion to dismiss in a memorandum

---

[9] *Id.* § 6.3(b).

[10] *Id.* §§ 1.1, 2.11(b)(ii).

[11] Am. Compl. ¶¶ 31–32, 36–37.

[12] Merger Agreement § 2.11(b)(ii).

[13] *See id.* §§ 1.1, 2.11(b)(ii).

opinion issued October 30, 2019 (the "Opinion").[14]  The parties lifted a stipulated

stay on discovery following the Opinion.[15]

On December 3, 2019, Allergan served its initial document requests (the

"Requests"), which define "Sellers" as

> each of the Sellers named in Schedule I to the Merger Agreement, and
> each of their corporate affiliates, agents, officers, directors,
> representatives, attorneys, advisors, consultants, or contractors
> (including their counsel in connection with the Merger Agreement,
> Wilson Sonsini Goodrich & Rosati, and their attorney-in-fact in this
> litigation, Fortis Advisors LLC).[16]

This definition includes over fifty individual non-party selling stockholders.[17]  Fortis

objected to the Requests "on the basis that they are directed to the 'Sellers' who are

not parties to this action," stating, "Fortis's responses to the Requests and any

production of documents in response to the Requests will be on behalf of Fortis

only."[18]

---

[14] D.I. 39.

[15] D.I. 24.

[16] D.I. 49 [hereinafter "Haller Decl."], Ex. 12, Defendant's First Request for Inspection and Production of Documents Directed to Plaintiffs, at 4.

[17] Merger Agreement at Schedule I.

[18] Haller Decl. Ex. 13, Plaintiff Fortis Advisors LLC's Objections and Responses to Defendant Allergan W.C. Holding Inc.'s Request for Inspection and Production of Documents, at 2.

The parties met and conferred. Both sides offered meaningful compromises, but the parties did not reach an agreement was reached.[19] The Motion followed.

## II. Analysis

In evaluating the relationship between and duties of Fortis and the Stockholders, I begin with the language of the Merger Agreement. Delaware law presumes parties are bound by the language of the agreement they negotiated, especially when the parties are sophisticated entities that have engaged in arms-length negotiations.[20]

The Merger Agreement appoints Fortis as the Stockholders' "sole, exclusive, true and lawful agent, representative and attorney-in-fact of all Sellers . . . with respect to any and all matters relating to, arising out of, or in connection with, this Agreement."[21] In particular, Allergan agreed that Fortis would "act for the Sellers with regard to all matters pertaining to the . . . Contingent Payments," including the

---

[19] Fortis has offered to accept electronic service of deposition and document subpoenas for certain members of the Stockholder Advisory Group identified in Section 2.10(d) of the Merger Agreement, and trial subpoenas for Oculeve's co-founder and CEO, Michael Ackermann, as well as perhaps for other Advisory Group witnesses depending on how the case unfolds. Haller Decl. ¶¶ 5, 6, 12, 24, Ex. 15; D.I. 55 ¶¶ 23, 26. Fortis has also offered to allow Allergan to use Delaware subpoenas, so long as any depositions take place where the witnesses are located. D.I. 55 ¶ 26.

[20] *See HC Cos., Inc. v. Myers Indus., Inc.*, 2017 WL 6016573, at *5 (Del. Ch. Dec. 5, 2017).

[21] Merger Agreement §§ 2.10(a), 2.11(b)(ii).

Enhanced Product Labeling Milestone.[22] The Merger Agreement does not empower Fortis to compel Stockholder participation in litigation: rather, it appoints Fortis to litigate in the Stockholders' stead.

The contractual appointment of a shareholder representative to bring certain actions makes that representative the real party in interest in those actions.[23] This structure is helpful to both buyers and sellers, as it "enables each side to resolve post-closing disputes efficiently."[24] Buyers also benefit from the fact that the structure makes a judgment against the representative binding on all the stockholders, eliminating the risk of inconsistent judgments.[25] This Court has been "reluctant to disregard the clear contractual authority of the Stockholders' Representatives at the

---

[22] *Id.* § 2.10(a)(i).

[23] *Coughlan v. NXP B.V.*, 2010 WL 1531596, at *2–3 (Del. Ch. Apr. 15, 2010) ("Coughlan, as Stockholders' Representative, is a party in whose name a contract has been made for the benefit of the GloNav Stockholders, who are admittedly the real parties in interest. Accordingly, she may bring this action without joining the GloNav Stockholders.").

[24] *Ballenger v. Applied Dig. Sols., Inc.*, 2002 WL 749162, at *10 (Del. Ch. Apr. 24, 2002); *see also Mercury Sys., Inc. v. S'holder Representative Servs. LLC*, 2014 WL 591218, at *1 (D. Mass. Feb. 14, 2014) (citing *Ballenger* for the principle that "a shareholder representative [is] a helpful mechanism for resolving post-closing disputes efficiently and quickly" and determining that the inclusion of individual shareholders as defendants would "eviscerat[e] the salutary purpose of having appointed a shareholder representative in the first place").

[25] *Ballenger*, 2002 WL 749162, at *11.

behest of a party, [Defendant], whose aims are clearly adverse to those of the former [Stockholders]."[26]

Allergan's Motion seeks to displace Fortis and the agreed-upon shareholder representative structure. To hold that the Stockholders must participate in discovery as real parties in interest would be contrary to the language and purpose of the Merger Agreement's shareholder representative structure. Allergan bargained for structural efficiency in closing the merger and in adjudicating post-closing disputes, and cannot now avoid that structure because third-party discovery introduces some tangential inefficiency in litigation against the sellers.[27]

Further, the Merger Agreement does not grant Fortis control over the Stockholders or their documents. "In the Rule 34 context, [c]ontrol has been defined to include 'the legal right to obtain the documents requested upon demand."[28] A party has possession and control of documents if it "has the power, unaided by the

---

[26] *Id.*

[27] D.I. 63 at 9 [hereinafter "Hrg. Tr."].

[28] *Deephaven Risk Arb Trading Ltd. v. UnitedGlobalCom, Inc.*, 2005 WL 1713067, at *11 (Del. Ch. July 13, 2005) (quoting 7 James Wm. Moore et al., *Moore's Federal Practice* § 34.14[2][b] (3d ed. 2005)).

court, to force production of the documents."[29]  The Merger Agreement does not give Fortis any right to compel Stockholders to produce documents; accordingly, Fortis has no control over those documents and no obligation to produce them in discovery.[30]

Both Fortis and Allergan note that no Delaware authority addresses the scope of a shareholder representative's control over the stockholders' documents.[31] Allergan has submitted cases from outside Delaware, but I find them distinguishable.[32]

---

[29] *Deephaven*, 2005 WL 1713067, at *11; *see Dawson v. Pittco Capital P'rs, L.P.*, 2010 WL 692385, at *1 (Del. Ch. Feb. 15, 2010) ("Court of Chancery Rule 34 requires defendants to produce all documents within their possession, custody, or control.").

[30] *See Theravectys SA v. Immune Design Corp.*, 2014 WL 5500506, at *2 (Del. Ch. Oct. 31, 2014) (declining "to apply a broader definition of 'control' that would also include an inquiry into the practical ability of the subpoenaed party to obtain documents" (quoting *Cradle IP LLC v. Tex. Instruments, Inc.*, 2013 WL 1794992, at *1 (D. Del. Apr. 29, 2013))).

[31] Plaintiff's counsel from Delaware and California contend that Allergan's position is unusual in this Court.  Hrg. Tr. at 13, 26; *id.* at 26 ("I checked with . . . my client at Fortis. He said this is the first case he's aware of in which a defendant in a merger agreement case has taken the position that the selling stockholders should be treated as parties . . . a real departure from the practice that's followed in Chancery . . .") (Martin S. Schenker, Esquire); *id.* ("That's been similar to my experience as well, not only with Fortis but also with respect to Shareholder Representative Services.") (Bradley R. Aronstam, Esquire).

[32] *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 314 F.R.D. 341 (S.D.N.Y. 2016); *JPMorgan Chase Bank, N.A. v. KB Home*, 2010 WL 1994787 (D. Nev. May 18, 2010); *JPMorgan Chase Bank v. Winnick*, 228 F.R.D. 505 (S.D.N.Y. 2005); *In re Infant Formula Antitrust Litig.*, 1992 WL 503465 (N.D. Fla. Jan. 13, 1992).  Delaware courts

Allergan points to two cases: *JPMorgan Chase Bank v. Winnick*[33] and *JPMorgan Chase Bank, N.A. v. KB Home*[34]. In both *Winnick* and *KB Home*, the court granted motions to compel discovery requiring administrative agents, established under credit agreements, to produce discovery in the principal lenders' possession, custody, and control. Neither of the underlying credit agreements included litigation arrangements such as those present in the Merger Agreement. This distinction is dispositive.

In *Winnick*, JPMorgan Chase Bank ("the Bank") served as administrative agent to lenders who sued a borrower company's directors and employees for fraud.[35] The Bank's authority as agent was governed by a credit agreement to which the borrower company was a party. Although the Bank was the assignee of certain litigation claims, the credit agreement did not expressly establish any litigation arrangement.[36] Considering the underlying agreement, the court placed the burden of discovery on the administrative agent, stating, "If plaintiff and the assignees failed

---

have not cited any of these authorities in the context of a shareholder representative framework or otherwise.

[33] 228 F.R.D. 505.

[34] 2010 WL 1994787.

[35] 228 F.R.D. at 506.

[36] *Id.* at 507; D.I. 59, Ex. 2 at 9–10.

to obtain rights to insist on cooperation from their assignors in providing such discovery, and cannot persuade the lending Banks to cooperate now, that is their problem, not defendants'."[37]

In *KB Home*, the Bank again served as administrative agent for a group of lenders who loaned money to the defendants.[38] The Bank and the lenders were parties to a written credit agreement, which again assigned certain rights to the Bank but did not delineate any litigation arrangement. The borrower defendant, which was not a party to the credit agreement, moved to compel lender discovery from the Bank as the administrative agent.[39] The court analyzed *Winnick* and reasoned that "[a]ny failure to obtain rights to insist on cooperation in discovery [in the credit agreement] was the Bank's fault and is therefore the [Bank's] problem, not the defendants'."[40]

---

[37] *Winnick*, 228 F.R.D. at 507 ("It would be unfair to the defendants to permit plaintiff and the assignees to divorce the benefits of the claims from the obligations that come with the right to assert them, to the detriment of defendants . . . having purchased the right to bring the lawsuit, there is nothing unfair about imposing on them the cost of purchasing cooperation or otherwise complying with discovery obligations").

[38] 2010 WL 1994787, at *1.

[39] *Id.* at *1–2.

[40] *Id.* at *5.

Here, the lack of authority to compel the stockholders' participation is not Fortis's burden to bear as agent. Unlike the credit agreements in *KB Home* and *Winnick*, which were silent as to litigation responsibilities, the Merger Agreement specifies Fortis is to act for the Sellers with regard to all matters pertaining to the Contingent Payments. Allergan consented to the shareholder representative structure as formulated in the Merger Agreement, which does not include the discovery rights it seeks to enforce, and which limits itself to the enumerated rights.[41] The fact that the Merger Agreement does not give Fortis control over the Stockholders and their discovery is not Fortis's "fault" or "problem"—it is a result that Allergan bargained for.

Further, Fortis has submitted that (i) it has no "substantive relationship with any of the Stockholders outside of the Advisory Committee and has had no communication with them about the litigation," and (ii) Fortis's litigation counsel was engaged for Fortis alone, not on the Stockholders' behalf.[42] These facts bolster the conclusion that Fortis does not have control over the Stockholders' documents, and raise the threat of legal conflicts if Fortis were ordered to procure discovery on the Stockholders' behalf.

---

[41] *See* Merger Agreement § 2.10(a).

[42] D.I. 55, Pl.'s Opp'n Br. ¶ 6; *id.*, Adam Lezack Decl., ¶¶ 5, 8.

As a practical matter, upholding the terms of the Merger Agreement will not significantly prejudice Allergan in this litigation. Allergan retained most of the Oculeve documents post-closing.[43] Allergan explained that its Motion seeks discovery into what Oculeve's investors thought about the merger.[44] This issue does not appear to me to be at the core of the parties' dispute, and in any event, it can be explored through third-party discovery.

## III. Conclusion

The Merger Agreement's shareholder representative structure identifies Fortis as the real party in interest in this action, and does not give Fortis control over the Stockholders' discoverable material. Allergan's Motion is denied.

To the extent an order is required to implement this decision, **IT IS SO ORDERED**.

Sincerely,

*/s/ Morgan T. Zurn*

MTZ/ms

Vice Chancellor

cc: All Counsel of Record via *File & ServeXpress*

---

[43] Hrg. Tr. at 10 ("Q: Can you elaborate for me a little bit more on basically what is already is in Allergan's control and what remains with Oculeve? . . . A: Well, Allergan should have most of the documentation.").

[44] D.I. 48 ¶ 8(d); Hrg. Tr. at 10–11.